IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE RENEE BUCHANAN,<br><br>   Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | No.  2:24-CV-2466-DMC<br><br>MEMORANDUM OPINION AND ORDER |

      Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 13 and 17.

      The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 7, 2022. See CAR 17.[1] In the application, Plaintiff claims disability began on January 5, 2022. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 18, 2024, before Administrative Law Judge (ALJ) Lisa B. Martin. In an April 17, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): lumbar spine disorder; asthma; hypertension; chronic systolic congestive heart failure; diabetes; obesity; depression; anxiety; and post-traumatic stress disorder (PTSD);

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform the full range of light work except she is precluded from climbing all ladders, ropes, and scaffolds; she is precluded from all dangerous work hazard exposure; the claimant is limited to performing postural motions occasionally; the claimant is precluded from all exposure to extreme heat, humidity, and cold conditions; the claimant is precluded from exposure to concentrated pulmonary irritants; the claimant is precluded from bilateral lower extremity foot control and pushing/pulling tasks; the claimant is limited to routine, simple, repetitive work tasks, work not requiring a fast assembly quota pace, and work involving only occasional required interactions with coworkers, supervisors, and the public; the claimant will be off-task up to 3% of the workday due to momentary symptom distractions.

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 19-30.

After the Appeals Council declined review on August 23, 2024, this appeal followed.

/ / /

/ / /

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on November 8, 2024, ECF No. 10.

## III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred in determining Plaintiff's residual functional capacity because the ALJ did not address Plaintiff's impairments in combination and did not account for moderate mental limitations; (2) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective statements and testimony at Step 4; and (3) the ALJ's vocational findings at Step 5 are flawed because the ALJ did not accurately address the Medical-Vocational Guidelines and because the jobs identified by the vocational expert conflict with Plaintiff's residual functional capacity.  See ECF No. 13, pg. 2.

For the reasons discussed below, the Court finds that the ALJ erred at Step 4 with respect to evaluation of Plaintiff's subjective statements and testimony.  Because a remand will be ordered on this basis, the Court does not address Plaintiff's arguments of error at Step 5.

Residual functional capacity is the most a person "can still do despite [the individual's] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[2]  An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record.  See SSR 85-15.  Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record

///

---

[2]  Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

pertinent findings and rate the degree of functional loss. See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

In this case, at Step 4 the ALJ described Plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b), except as follows. The claimant is precluded from all ladders, ropes, and scaffolds climbing, and all dangerous work hazards exposure, and the claimant is limited to performing the remaining postural motions occasionally. The claimant is precluded from all exposure to extreme heat, humidity, and cold conditions, and all exposure to concentrated pulmonary irritants. The claimant is precluded from bilateral lower extremity foot control and pushing/pulling tasks. The claimant is limited to routine, simple, repetitive work tasks, work not requiring a fast assembly quota pace (i.e. production assembly line environment where one's work impacts work down the line), and work involving only occasional required interactions with coworkers, supervisors, and the public. The claimant will be off task up to 3% of the workday due to momentary symptom distractions.

CAR 23.

Plaintiff raises three arguments challenging the ALJ's residual functional capacity finding at Step 4. Specifically, Plaintiff contends: (1) the ALJ failed to consider her impairments in combination, see ECF No. 13, pgs. 8-10; (2) the ALJ failed to account for moderate mental limitations, see id. at 10-11; and (3) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective statements and testimony, see id. at 16-18.

A.   **Consideration of Plaintiff's Impairments in Combination**

Plaintiff argues:

> Ms. Buchanan has chronic pain, fatigue, edema, swelling in her legs, severe chronic depression anxiety and with PTSD. The ALJ has not addressed these impairments in combination in the RFC. Ms. Buchanan has a type four congestive heart condition which further compounds her pain and swelling when she exerts herself.
>
> * * *
>
> . . . The ALJ fails to address the combination of impairments which preclude the ability to focus or concentrate. As such, her impairments were not addressed in combination. Therefore, the ALJ's findings are not supported by substantial evidence.

ECF No. 13, pg. 9-10.

The Court agrees with Defendant that "Plaintiff's contentions are unsupported by any coherent or specific argument and must fail." ECF No. 17, pg. 8. While Plaintiff is correct that the ALJ is required to consider the impact of the combination of Plaintiff's medically determinable impairments, see Social Security Ruling 85-28, Plaintiff has pointed to no evidence to suggest that the ALJ did not do so. To the extent Plaintiff's argument is premised on the ALJ's failure to accept all of her subjective statements and testimony as to the limiting effects of her various impairments, that issue is discussed below. Except for her challenge to the ALJ's assessment of her subjective statements and testimony, Plaintiff offers no specific arguments to support her contention that the ALJ failed to address her impairments in combination at Step 4, and this Court presumes that the ALJ followed the applicable regulations in the absence of any indication to the contrary.

      **B.**    **Mental Limitations**

The ALJ accounted for Plaintiff's mental limitations in determining residual functional capacity as follows:

> . . . The claimant is limited to routine, simple, repetitive work tasks, work not requiring a fast assembly quota pace (i.e. fast assembly line environment where one's work impacts work down the line), and work involving only occasional interactions with coworkers, supervisors, and the public. The claimant will be off task up to 3% of the workday due to momentary symptom distractions.

CAR 26.

Plaintiff argues that these restrictions fail to address Plaintiff's moderate mental limitations. See ECF No. 13, pgs. 10-11. According to Plaintiff:

> The RFC is inadequate because Ms. Buchanan's inability to control her flashbacks and difficulty meeting people are inadequately addressed. As such, the ALJ has not provided for the mental limitations in the RFC. Therefore, the ALJ's findings are not supported by substantial evidence.

Id. at 11.

/ / /

/ / /

/ / /

7

Plaintiff's argument is unpersuasive. As to Plaintiff's difficulties meeting people, this limitation is accounted for in the ALJ's finding that Plaintiff can have only occasional interactions with coworkers, supervisors, and the public. As to difficulties with flashbacks, Plaintiff's argument is unsupported. Notably, Plaintiff does not cite to any evidence indicating that she has problems with flashbacks. Plaintiff's own summary of the medical evidence and hearing testimony is devoid of any mention of flashbacks.[3] See ECF No. 13, pgs. 5-6. To the extent flashbacks cause temporary distractions, the ALJ accounted for this limitation in determining that Plaintiff will be off-task for a portion of the workday due to symptom distraction.

### C. Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///
///
///
///

---

[3] Though Plaintiff does not mention flashbacks in her summary of the evidence and testimony, Plaintiff did in fact testify at the hearing regarding PTSD-related flashbacks. The ALJ's evaluation of Plaintiff's subjective statements and testimony is addressed later in this opinion.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

/ / /

/ / /

In determining Plaintiff's residual functional capacity at Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony. See CAR 24-27. The ALJ summarized Plaintiff's subjective statement and testimony as follows:

> The claimant alleges disability due to her heart condition wherein her heart only works at 50%, fatigue, back pain, PTSD, anxiety, lightheadedness, and shakiness related to diabetes (Exhibit D4E/1). The claimant reportedly has no issues with performing personal care tasks and is able to dispense her husband's medication, dispense her pet's medication, and prepare meals for herself, her husband, as well as feed her dogs (Exhibit D4E/2). The claimant reportedly is able to cook, clean the bathroom sink, vacuum, clean the toilet, and do dishes (Exhibit D4E/3). The claimant reportedly is able to drive, take out the trash, manage her finances, and grocery shop once a month (Exhibit D4E/4). The claimant reportedly has difficulty with lifting, bending, standing, walking, and stair climbing (Exhibit D4E/6). The claimant reportedly can only walk for 30 steps before needing to rest due to her heart condition (Exhibit D4E/6).
>
> As for activities, the claimant reportedly reads, writes, listens to music, and watches movies or television (Exhibit D4E/5).
>
> At the hearing, the claimant testified that she was no longer able to work due to heart failure, diabetes, and issues related to her feet tingling, swelling and aching. She testified that she takes hydrocodone for pain and elevates her feet for the swelling, but it never seems to go down. The claimant further testified that she takes medication for her depression and anxiety, but she does not participate in therapy. She additionally testified that she is only able to stand for 4-5 minutes before she begins to sway due to orthopedic issues, that she is only able to walk for 20 feet, that she is only able to sig for about 2-3 minutes before needing to change positions due to her lower back and feet going numb. Finally, the claimant testified that she has nightmares a lot, racing thoughts all the time, lack of focus, bad depression, PTSD-related flashbacks, and a lack of trust for people in general.

CAR 24.

After summarizing the longitudinal objective evidence of record, the ALJ made the following findings and to Plaintiff's subjective statements and testimony:

> As for the claimant's statements about the intensity, persistence, and limiting effects of their symptoms, they are not entirely consistent with other evidence of record.
>
> First, the claimant's allegations of pain symptoms are inconsistent with claimant's treating physicians, Dr. Kabbani and Dr. Borruso's treatment notes, which routinely document no signs of distress (Exhibits D20F/5, D28F/2, 11, 14, and 17).

///

> Second, while the claimant asserted difficulties with bending, standing, walking, stair climbing, and lifting, her treatment provider, Dr. Jurisich, observed a normal neurological exam, normal cardiovascular exam, and normal musculoskeletal exam including normal range of motion, steady gait, and no tenderness (Exhibit D27F/17). Additionally, Dr. Kabbani observed a normal gait, normal sensation, normal tone, normal respiratory movement, and normal strength, despite bilateral lower extremity edema (Exhibit D20F/5).
>
> Third, as far as pain treatment, the record shows that conservative measures such as medication, including hydrocodone, and epidural steroid injections have been effective in managing the claimant's pain symptoms (Exhibits D21F/13, D25F/29, and D28F/12).
>
> Fourth, imaging revealed modest abnormalities. The claimant's September 2023 EKG results were unremarkable (Exhibit D28F/52). There is no evidence of any X-Ray, MRI, or CT scan performed after the claimant's alleged onset date. Such modest abnormalities would not be expected to cause highly limiting symptoms.
>
> Given the evidence of limited treatment, the modest abnormalities shown on diagnostic imaging, and the claimant's significant reported activities such as exercising including hiking, personal care tasks, meal preparation, vacuuming, dishes, and taking care of her pets (Exhibits D4E/2 and D28F/4), the undersigned concludes no greater limitations are warranted than those described above.

CAR 26-27.

Plaintiff argues that the ALJ's assessment contains errors with respect to records from Drs. Kabbani and Borruso and is at odds with records from Dr. Johnson. See ECF No.13, pg. 17. Plaintiff also argues that the ALJ erred in relying on Plaintiff's activities of daily living. See id. at 17-18.

        1.     Records from Drs. Kabbani and Borruso

Plaintiff argues:

> The ALJ's reasons to disregard Ms. Buchanan's statements contain error. The ALJ states Drs Kabbani and Borruso's progress notes do not note pain, hydrocodone, epidural steroid injections have been effective in managing the claimant's pain symptoms and imagine [sic] reveals modest abnormalities.
>
> The record does not support the ALJ. Dr. Kabbani records congestive heart failure, [AR 1290]. Dr. Kabbani's records do not state Ms. Buchanan is no longer in pain, or that her treatment has been effective. Dr. Borruso is a psychologist, and his notes do not apply to Ms. Buchanan's heart or back pain.

ECF No. 13, pg. 17.

11

1    At the outset, the Court rejects Plaintiff's suggestion that records from Dr. Borruso "do not apply" to the question of chronic pain because he is a psychologist. Though Dr. Borruso is a psychologist and is not a pain specialist, the doctor was nonetheless in a position to observe Plaintiff during office visits and, as a result, his observations are relevant to the extent they reveal whether or not Plaintiff was in distress during examinations due to pain.

The question before the Court is whether the ALJ accurately summarized the doctors' findings. De. Kabbani's records are found at Exhibit D20F. See CAR 1286-1307. Dr. Borruso's record are found at Exhibit D28F. See id. at 1456-1511.

According to the ALJ, Dr. Kabbani, who is Plaintiff's treating physician, reported that Plaintiff was not in distress. See CAR 26-27. Dr. Kabbani's treatment notes at Exhibit D20F support this characterization. On March 15, 2022, Dr. Kabbani observed that Plaintiff was in no acute distress at the office visit. See id. at 1290. The ALJ also stated that Dr. Kabbani observed normal findings in categories which one would expect to be affected by chronic pain, such as gait, sensation, and strength. See id. at 26-27. This too is supported by the doctor's notes which reflect that, on March 15, 2022, Plaintiff had normal sensation, normal tone and strength, and normal gait. See id. at 1290.

The ALJ stated that Dr. Borruso also reported that Plaintiff was not in distress at office. See id. at 26-27. Again, the doctor's records corroborate this characterization. On January 25, 2023, May 8, 2023, August 7, 2023, and December 6, 2023, Dr. Borruso observed that Plaintiff was not in acute distress. See id. at 1457, 1465, 1468, and 1472. And, contrary to Plaintiff's assertion, Dr. Kabbani's records do in fact reflect that Plaintiff's chronic pain was well controlled with medication. In particular, on August 7, 2023, Dr. Kabbani noted that Plaintiff's chronic pain syndrome was "[s]table at this time" and the doctor recommended continuing with current medications. See id. at 1467.

Given this record, the Court does not agree with Plaintiff that the ALJ mischaracterized records from Drs. Kabbani and Borruso.

/ / /

/ / /

2. Plaintiff's Daily Activities

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ cited Plaintiff's activities of hiking, personal care tasks, meal preparation, vacuuming, doing dishes, and taking care of her pets as a reason to discount her subjective statements and testimony. See CAR 27. According to Plaintiff:

> The ALJ reasons, "the claimant's significant reported activities such as exercising including hiking, personal care tasks, meal preparation, vacuuming, dishes, and taking care of her pets". The ALJ is in error. The ALJ refers to SSA form 3373 part C daily activities (AR 359). This form was the completed by Ms. Buchanan and does not state she hikes or that she exercises. She wrote, "[t]here's days that I don't do anything because I'm to (sic) tired, or no energy to do anything (AR 359).

ECF No. 13, pgs. 17-18.

///

The questions Plaintiff places before the Court are: (1) whether the ALJ mischaracterized her statement of daily activities; and (2) whether Plaintiff's daily activities reflect capabilities which are transferrable to a full-time competitive work setting.

Plaintiff's statement is found in the record at Exhibit D4E. See CAR 358-65. In Section C regarding daily activities, Plaintiff stated that, on some days, she does light cleaning, cooks breakfast, and washes dishes. See id. at 359. She also stated that, on other days, she cannot do anything due to fatigue. See id. Plaintiff stated that she has no problems with personal care tasks. See id. at 359. More specifically as to meals, Plaintiff state that she spends an hour daily preparing meals, consisting of left-overs heated in the microwave or sandwiches. See id. at 360. As to her ability to get around, Plaintiff stated that she takes herself to doctors' appointments and can drive a car. See id. at 361. She added that she doesn't like going anywhere alone because she doesn't feel comfortable and that her husband accompanies her. See id. Plaintiff stated that she shops in stores and on the computer. See id. She shops for groceries once a month. See id. As to hobbies and interests, Plaintiff states that she reads, writes, listens to music, and watches television and movies daily with no problem. See id. at 362.

In the hearing decision, the ALJ stated that Plaintiff's activities of daily living are "extensive" and include hiking. CAR 26-27. For support, the ALJ cites Plaintiff's statement at Exhibit D4E, page 2, CAR 359, and Dr. Borruso's records at Exhibit D28F, page 4, CAR 1459. The Court has reviewed both of these cited records in detail and can find no mention of hiking. The Court, therefore, agrees with Plaintiff that the ALJ has mischaracterized the record in describing Plaintiff's activities of daily living.

The Court also agrees with Plaintiff that the ALJ has mischaracterized the record in describing Plaintiff's daily activities as "extensive." For example, while Plaintiff has stated that she can prepare meals daily, she also stated that meals consist of left-overs prepared in the microwave or sandwiches. Further, throughout her statement, Plaintiff describes her activities as being very limited due to fatigue. The ALJ also appears to have not accounted for Plaintiff's statements that she has trouble walking more than 30 steps before getting out of breath and that

///

she must rest to allow her breathing to slow down. See CAR 362. This testimony is consistent with Plaintiff's statements of fatigue. Plaintiff's hearing testimony also reflects that Plaintiff's activities of daily living are limited. See CAR 36-51.

Because the ALJ has not accurately described Plaintiff's subjective statements and testimony, this Court cannot find that the ALJ's decision to discount Plaintiff's subjective statements and testimony is based on substantial evidence of record. This matter will be remanded to allow the agency to conduct a further review of Plaintiff's residual functional capacity in light of her stated limitations.

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 13, is granted.
2. Defendant's motion for summary judgment, ECF No. 17, is denied
3. The Commissioner's final decision is reversed, and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  August 22, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE